Filed 3/27/13  Marriage of Vigil CA4/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re the Marriage of LEILANI C. and DALE W. VIGIL. | D059281 |
| LEILANI C. VIGIL, | |
| Respondent, | (Super. Ct. No. D493339) |
| v. | |
| DALE W. VIGIL, | |
| Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Susan D. Huguenor, Judge.  Reversed in part, affirmed in part and remanded for further proceedings.

Dale W. Vigil appeals from an order denying his request for a downward modification of spousal support to his former spouse, Leilani C. Vigil, and requiring him to contribute $2,500 toward her attorney fees pursuant to Family Code section 2030. (Undesignated statutory references are to the Family Code.)  Dale contends (1) the trial

court abused its discretion by considering his income at the date of separation, rather than the income stated in the parties' marital settlement agreement (MSA), to determine if there was a material change in circumstances, (2) the trial court erred in considering the marital standard of living, and (3) the trial court abused its discretion in ordering him to contribute to Leilani's attorney fees. We conclude the basis upon which the trial court undertook consideration of Dale's request to modify spousal support was flawed. Accordingly, we reverse that portion of the trial court's order and remand for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

Dale and Leilani separated in July 2005 after approximately 38 years of marriage. In 2007, they entered into a marital settlement agreement (MSA), which the trial court incorporated into its judgment of dissolution. The terms of the MSA required Dale to pay $6,500 per month in spousal support. The MSA further stated, "The . . . spousal support provisions [were] based upon the following facts and circumstances, which existed when [the MSA] was negotiated: [Dale] is age 62 and [Leilani] age 61. [¶] [Dale] is currently employed with the Hayward Unified School District and earns $19,145.50 gross monthly income. . . . The level of spousal support does not allow [Leilani] to meet the marital standard of living."

In August 2010, Dale sought to modify his spousal support obligation. He claimed there was a change in circumstances because he was no longer employed with the Hayward Unified School District and was not making the $19,145.50 per month income recited in the MSA. Instead, as of July 2010, he was earning $13,382 per month

2

as a superintendent with the Los Angeles Unified School District. Leilani opposed Dale's request to modify spousal support, claiming a reduction was not warranted because Dale's income had actually increased from the time of their separation. Specifically, she asserted that Dale earned $12,833.33 per month when they separated in 2005, which was less than his present income.

The trial court declined to modify spousal support, finding there had been no showing of a substantial change in circumstances because Dale's income had increased from the date of separation. The court explained "that the income of [Dale] as of the date of separation, and not the incomes of the parties recited in the Judgment filed [on] June 5, 2007, [was] the basis to decide if a substantial change of circumstances ha[d] occurred since entry of the Judgment." "The [c]ourt also note[d] the recital in the Judgment that the level of spousal support therein d[id] not allow [Leilani] to meet the marital standard of living." Lastly, the court found "[Dale was] doing much better than [Leilani]" and based thereon ordered him to contribute $2,500 toward her attorney fees.

DISCUSSION

I. <em>Modification of Spousal Support</em>

A. General Legal Principles

"'Modification of spousal support, even if the prior amount is established by agreement, requires a material change of circumstances since the last order. [Citations.] Change of circumstances means a reduction or increase in the supporting spouse's ability to pay and/or an increase or decrease in the supported spouse's needs. [Citations.] It includes all factors affecting need and the ability to pay.' [Citation.] 'A trial court

3

considering whether to modify a spousal support order considers the same criteria set forth in . . . section 4320 as it considered in making the initial order.'" (*In re Marriage of Dietz* (2009) 176 Cal.App.4th 387, 396 (*Dietz*).) The section 4320 criteria include the extent to which each party's earning capacity is sufficient to maintain the marital standard of living; contributions to the supporting spouse's education, training, or career; the supporting party's ability to pay spousal support; the parties' respective needs based on the marital standard of living, obligations and assets including their separate property; their ages and health; the tax consequences to each party; the duration of the marriage; the supported spouse's ability to engage in gainful employment; the "balance of the hardships" to the parties; and "[a]ny other factors the court determines are just and equitable." (§ 4320, subds. (a)–(k), (n).)

"'The propriety of an order modifying spousal support "rests within the trial court's sound discretion. So long as the court exercised its discretion along legal lines, its decision will not be reversed on appeal if there is substantial evidence to support it. [Citations.]" Reversal requires a clear showing of abuse of discretion.'" (*In re Marriage of Biderman* (1992) 5 Cal.App.4th 409, 412.)

B. Change of Circumstances

Dale contends the trial court erred by basing its finding that there was not a material change in circumstances on his income at the time the parties separated in 2005 rather than on his income stated in the 2007 MSA. We agree.

The moving party must show a "material change since *the entry of the previous order*." (*In re Marriage of Schmir* (2005) 134 Cal.App.4th 43, 47, italics added

4

(*Schmir*).)  When the court includes the parties' stipulation in its own decree, it "presumes that the parties arrived at a fair support award, after arm's-length negotiations, that took into consideration all of the circumstances as they then existed."  (*In re Marriage of Hentz* (1976) 57 Cal.App.3d 899, 901.)  Accordingly, "[t]he support order sought to be modified is conclusive as to circumstances existing when entered."  (Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2012) ¶ 17:151, p. 17–37, citing *In re Marriage of Hoffmeister* (1987) 191 Cal.App.3d 351, 364.)  "'[I]n determining what constitutes a change in circumstances the trial court is bound to give effect to the intent and reasonable expectations of the parties as expressed in the agreement,' and, thus, 'the trial court's discretion to modify the spousal support order is constrained by the terms of the marital settlement agreement.'"  (*Dietz, supra*, 176 Cal.App.4th at p. 398.)

Here, the MSA reflected the parties' reasonable expectations as to spousal support. Dale and Leilani agreed that Dale would pay $6,500 per month, which was based on his monthly income of $19,145.50 when they negotiated the MSA.  In evaluating whether there was a material change in circumstances, the trial court ignored the terms of the MSA and instead focused on Dale's income when the parties separated in 2005.  By doing this, the trial court missed the general rule that there must be a change in circumstances "since the entry of the previous order."  (*Schmir, supra*, 134 Cal.App.4th at p. 47.)  The trial court was required to "'give effect to'" the parties' "'intent and reasonable expectations . . . *as expressed in the agreement*.'"  (*Dietz, supra,* 176 Cal.App.4th at p. 398, italics added.)

5

In basing its findings on Dale's earlier 2005 income, the trial court essentially discarded the parties' bargained-for MSA and inserted terms of its own. However, the court was not in a position to reevaluate the parties' agreement. "[The court] ha[d] no right to assume that the parties when they made their stipulation for [spousal support] . . . did not know precisely what they were doing. [The court] ha[d] no way of knowing what multitude of factors, or even what single consideration, entered into those stipulations." (*Modglin v. Modglin* (1966) 246 Cal.App.2d 411, 415.) As a contract between the parties, the trial court should have considered the 2007 MSA as a benchmark for determining whether there was a change in circumstances. The trial court's act of ignoring the terms of the MSA rendered the MSA meaningless.

In sum, we conclude the trial court abused its discretion in concluding there was no material change in circumstances because its reasoning for that conclusion was flawed. Accordingly, we must reverse that portion of the court's order and remand the matter for further proceedings. On remand, the trial court should consider this court's opinion and the section 4320 criteria to determine whether a modification of spousal support is appropriate.

C. Marital Standard of Living

Dale next argues the trial court erred in considering the marital standing of living because that factor is only relevant when the supporting spouse's income had increased from entry of the previous order. We disagree.

"Spousal support is governed by statute. [Citations.] In ordering spousal support, the trial court *must* consider and weigh *all* of the circumstances enumerated in the statute,

6

to the extent they are relevant to the case before it. [Citations.] The first of the enumerated circumstances, the marital standard of living, is relevant as a reference point against which the other statutory factors are to be weighed. [Citations.]" (*In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269, 302–303, second italics added (*Cheriton*).)

Here, the trial court's order "note[d] the recital in the Judgment that the level of spousal support therein d[id] not allow [Leilani] to meet the marital standard of living." It is unclear from the record what impact that recital had on the court's ruling. Nevertheless, in considering whether to modify a spousal support order, the trial court must consider all of the criteria set forth in section 4320, including the marital standard of living. (*Dietz*, *supra*, 176 Cal.App.4th at p. 396; *Cheriton*, *supra*, 92 Cal.App.4th at pp. 302–303.) Dale does not cite to any authority that supports his argument that the marital standard of living is only relevant when the supporting spouse's income increased since entry of the previous order. Accordingly, we reject his argument.

## II. *Attorney Fees*

Dale contends the trial court abused its discretion in ordering him to contribute $2,500 toward Leilani's attorney fees. We disagree.

Under section 2030, a trial court has broad discretion to award attorney fees based on a consideration of the parties' respective incomes and needs, and any other factors affecting the parties' ability to pay. (§ 2030, subd. (a)(2).) "In determining what is just and reasonable under the relative circumstances, the court shall take into consideration the need for the award to enable each party, to the extent practical, to have sufficient financial resources to present the party's case adequately, taking into consideration . . .

7

the circumstances of the respective parties described in Section 4320. The fact that the party requesting an award of attorney's fees and costs has resources from which the party could pay the party's own attorney's fees and costs is not itself a bar to an order that the other party pay part or all of the fees and costs requested. Financial resources are only one factor for the court to consider in determining how to apportion the overall cost of the litigation equitably between the parties under their relative circumstances." (§ 2032, subd. (b).)

Here, the trial court ordered Dale to contribute $2,500 to Leilani's attorney fees because "[he was] doing much better than [Leilani]." Dale argues the trial court's conclusion was not supported by the record because the parties' income and expense declarations showed a difference of only $1,144 in their gross monthly incomes. To arrive at that number, Dale included his $6,500 per month spousal support obligation in Leilani's income. However, according to Leilani's income and expense declaration, she was not receiving that full amount. Regardless, Dale's monthly income is still higher than Leilani's. Further, while the parties' respective incomes are a factor, the trial court must also consider their needs. (§ 2030, subd. (a)(2).) Leilani's monthly expenses are $6,831, whereas Dale's are $6,257. Under these circumstances, we conclude the trial court acted within its discretion in ordering Dale to contribute $2,500 to Leilani's attorney fees.

## DISPOSITION

That portion of the trial court's order denying appellant's request for a downward modification of spousal support is reversed and the matter is remanded for further

8

proceedings consistent with this opinion.  The balance of the order is affirmed.  The

parties shall bear their own costs on appeal.


McINTYRE, J.

WE CONCUR:

BENKE, Acting P. J.

NARES, J.